UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

COOLMATH.COM, LLC,

        Plaintiff,

v.                      Case No. 8:14-cv-2638-T-33TBM

EVERTAP LLC, ET AL.,

        Defendants.
_____/

**ORDER**

This matter comes before the Court in consideration of Plaintiff Coolmath.com, LLC's (Plaintiff) Motion for Default Judgment (Doc. # 27), filed on December 10, 2014. For the reasons that follow, the Court grants the Motion as set forth herein.

**I.  Background**

Plaintiff is the owner of all rights in the trade name and registered mark COOLMATH as well as numerous COOLMATH-inclusive marks (collectively referred to as "COOLMATH Mark"). (Doc. # 1 at ¶¶ 1, 10). Plaintiff has used the COOLMATH Mark since early 1997 "in connection with math and science educational computer games in the United States and around the world . . .," including in connection with educational websites. (Id. at ¶¶ 1, 11). Plaintiff's websites

now include coolmath.com, coolmath4kids.com, and coolmath-games.com. (Id. at ¶ 12).

According to the Complaint, Plaintiff's websites "have been considered leading internet sites for math games and education." (Id. at ¶ 13).  As a result, "Plaintiff takes great pains to ensure that every game on its sites has educational value, with age-appropriate content and skills to be gained for the user." (Id. at ¶ 14). "Based in part on the care Plaintiff has taken with its services, Plaintiff's websites are well-regarded by teachers and parents and are approved for use in schools across the nation." (Id.). "As a consequence of Plaintiff's extensive and continuous use of the COOLMATH Mark, the COOLMATH Mark enjoys considerable goodwill in the United States and elsewhere, identifies and distinguishes Plaintiff's services from those of others, and has become a valuable asset of Plaintiff." (Id. at ¶ 17).

In addition, the COOLMATH Mark has been registered in the United States for use in connection with "'Computer services, namely, providing on-line website in the field of mathematics and science education; entertainment services, namely providing on-line computer games in the field of mathematics and science [e]ducation' in International Class 41." (Id. at ¶ 18; Doc. # 1-2). This trademark registration

2

- U.S. Registration No. 3,404,699 – is "valid, subsisting and in full force and effect." (Doc. # 1 at ¶ 18).

On April 23, 2014, Defendant Ryan Wade registered the coolmathgamesforfun.com domain name. (Id. at ¶ 20). In conjunction with registering this domain name, Defendants Wade and Evertap LLC formed a new limited liability company - Defendant Cool Math Games For Fun, LLC - a division of Evertap, "with the mission of offering online math games." (Id. at ¶ 21).

Shortly after registering the coolmathgamesforfun.com domain name, Defendants launched a website at coolmathgamesforfun.com "offering online math-related games under the mark COOL MATH GAMES FOR FUN (the 'Infringing Mark')," which was "aimed at students identical and/or closely related to those games offered by Plaintiff under its COOLMATH Mark." (Id. at ¶ 22). At the same time, or shortly thereafter, Defendants also began marketing math-related game applications under the Infringing Mark through the Apple iTunes Store under the trade name of Cool Math Games for Fun. (Id. at ¶ 23).

According to the Complaint,

Defendants have never been associated or affiliated with Plaintiff in any way and Plaintiff has never

> authorized or otherwise licensed Defendants' use of the Infringing Mark in connection with the provision of online math games, the trade name of Defendant Cool Math Games For Fun, or any other products or services in the United States or elsewhere.

(Id. at ¶ 24). Therefore, on October 3, 2014, Plaintiff's counsel sent a letter to Wade concerning Defendants' "unauthorized use of the Infringing Mark" and requested that Defendants "immediately cease their unlawful activities." (Id. at ¶ 26). Although Defendants are on actual notice of Plaintiff's exclusive rights in the COOLMATH Mark, Plaintiff contends that "Defendants have nevertheless continued to advertise and offer, under the Infringing Mark, online math games that are identical and/or closely related to those offered by Plaintiff under its COOLMATH Mark." (Id. at ¶ 27).

Plaintiff initiated this action on October 20, 2014, asserting claims for (1) Federal Trademark Infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114(1), (2) Federal Unfair Competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), (3) Cybersquatting Under 43(d) of the Lanham Act, 15 U.S.C. § 1125(d), (4) Unlawful Acts and Practices, Fla. Stat. § 501.204, and (5) Unfair Competition under Florida Common Law. (See Doc. # 1). Plaintiff requested that the Court award injunctive relief, including enjoining Defendants from

4

using the Infringing Mark, statutory damages under 15 U.S.C.
§ 1125(d) and other damages, costs, and fees as set forth in
the Complaint. (See Id.).

Plaintiff effectuated service of process on Defendants
on October 29, 2014. (Doc. ## 18-20). Defendants failed to
respond to the Complaint.  As a result, on November 21, 2014,
Plaintiff filed an application for Clerk's default against
Defendants (Doc. # 22), and the Clerk issued its entry of
default on November 26, 2014, against Cool Math Games For Fun
and on December 8, 2014, against Evertap and Wade (Doc. ##
24-25). Thereafter, on December 10, 2014, this Court entered
an Order directing Plaintiff to proceed with filing its motion
for default judgment against Defendants. (Doc. # 26). That
same day, Plaintiff filed the present Motion. (See Doc. #
27).

## II.  Legal Standard

Federal Rule of Civil Procedure 55(a) provides: "When a
party against whom a judgment for affirmative relief is sought
has failed to plead or otherwise defend, and that failure is
shown by affidavit or otherwise, the clerk must enter the
party's default." A district court may enter a default
judgment against a properly served defendant who fails to
defend or otherwise appear pursuant to Federal Rule of Civil

5

Procedure 55(b)(2). <u>DirecTV, Inc. v. Griffin</u>, 290 F. Supp. 2d 1340, 1343 (M.D. Fla. 2003).

The mere entry of a default by the Clerk does not, in itself, warrant the Court entering a default judgment. <u>See</u> <u>Tyco Fire & Sec. LLC v. Alcocer</u>, 218 F. App'x 860, 863 (11th Cir. 2007) (citing <u>Nishimatsu Constr. Co. v. Hous. Nat'l Bank</u>, 515 F.2d 1200, 1206 (5th Cir. 1975)). Rather, a Court must ensure that there is a sufficient basis in the pleadings for the judgment to be entered. <u>Id.</u> A default judgment has the effect of establishing as fact the plaintiff's well-pled allegations of fact and bars the defendant from contesting those facts on appeal. <u>Id.</u>

"Once liability is established, the court turns to the issue of relief." <u>Enpat, Inc. v. Budnic</u>, 773 F. Supp. 2d 1311, 1313 (M.D. Fla. 2011). "Pursuant to Federal Rule of Civil Procedure 54(c), '[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings,' and a court may conduct hearings when it needs to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter." <u>Id.</u>

III. **<u>Liability</u>**

    A. **<u>Trademark Infringement Under Federal Law</u>**

Trademark infringement is proscribed by 15 U.S.C. § 1114(1)(a). That provision reads, in relevant part:

(1) Any person who shall, without the consent of the registrant –

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1)(a). Thus, to succeed on a trademark infringement claim, a plaintiff must prove (1) that its valid mark was used in commerce by the defendant without consent and (2) that the unauthorized use was likely to cause confusion, to cause mistake, or to deceive. See Gen. Motors Corp. v. Phat Cat Carts, Inc., 504 F. Supp. 2d 1278, 1283 (M.D. Fla. 2006); Dieter v. B&H Indus. of S.W. Fla., Inc., 880 F.2d 322, 326 (11th Cir. 1989).

### i.   Trademark Validity and Unauthorized Use

Plaintiff contends that "there is no question that Plaintiff has a valid mark" (Doc. # 27 at 12), and this Court agrees. In the Complaint, Plaintiff posits that it has registered the COOLMATH Mark - U.S. Registration No. 3,404,699 - for use of the COOLMATH Mark in connection with

"'Computer services, namely, providing on-line website in the field of mathematics and science education; entertainment services, namely, providing on-line computer games in the field of mathematics and science [e]ducation' in International Class 41." (Doc. # 1 at ¶ 18; Doc. # 1-2). To that end, Plaintiff avers that U.S. Registration No. 3,404,699 has become incontestable under Section 15 of the Lanham At, 15 U.S.C. § 1065, and therefore "serves as conclusive evidence of the validity of the registered mark, of the registration of the mark, and of Plaintiff's exclusive right to use the mark in commerce on or in connection with the goods and services for which the mark is registered." (Doc. # 1 at ¶ 19; Doc. # 27 at 12). In addition, as set forth in the Complaint, since as early as 1997, Plaintiff has continuously used the COOLMATH Mark to identify its math and science game and educational websites. (Doc. # 1 at ¶ 11).

Furthermore, Plaintiff argues that it has never consented to Defendants' use of the Infringing Mark, in connection with the provision of online math games. (Id. at ¶ 24). In fact, Plaintiff sent Defendants a letter requesting that they cease and desist their "unlawful activities." (Id. at ¶ 26). Therefore, the Court finds that Plaintiff has

satisfied the initial element of its trademark infringement claim.

### ii.  **Likelihood of Confusion**

"Proof of 'likelihood of confusion' is the *sine qua non* in actions for 15 U.S.C. § 1114 trademark infringement . . . ." Fila U.S.A., Inc. v. Kim, 884 F. Supp. 491, 494 (S.D. Fla. 1995). "Determination of likelihood of confusion requires analysis of the following seven factors: (1) type of mark, (2) similarity of mark, (3) similarity of the products [or services] the marks represent, (4) similarity of the parties' retail outlets and customers, (5) similarity of advertising media used, (6) defendant's intent and (7) actual confusion." Dieter, 880 F.2d at 326. "Although likelihood of confusion generally is a question of fact, it may be decided as a matter of law." Alliance Metals, Inc. of Atlanta v. Hinely Indus., Inc., 222 F.3d 895, 907 (11th Cir. 2000).

In this case, Plaintiff has sufficiently alleged that Defendants' product is likely to cause consumer confusion. (See Doc. # 1). In particular, as an incontestable mark, Plaintiff's COOLMATH Mark is presumed to be strong. (Doc. # 27 at 14)(citing Dieter v. B&H Indus. of Sw. Fla., Inc., 880 F.2d 322, 329 (11th Cir. 1989)("Because Dieter's mark is incontestable, then it is presumed to be . . . a relatively

strong mark."). Likewise, the similarity between the COOLMATH Mark and the Infringing Mark is apparent as suggested by Plaintiff: "Defendants have taken Plaintiff's COOLMATH Mark in its entirety and are using the identical mark on competitive goods with the addition of the generic words 'GAMES' and 'FOR FUN.'" (Id.).

Furthermore, there is similarity between Plaintiff and Defendants' "goods and services, sales and methods, and advertising methods." (Id.). Namely, as alleged in the Complaint, Defendants have been and presently are advertising and offering online math games identical or nearly identical to those offered by Plaintiff through a means of distribution identical to that used by Plaintiff. (Id.; Doc. # 1 at ¶¶ 22-23).

Moreover, Plaintiff has alleged that Defendants' use of the Infringing Mark is causing actual confusion in the marketplace. (Doc. # 27 at 15; Doc. # 1 at ¶ 32). This is so, because consumers mistakenly assume "that Defendants and their services offered under the Infringing Mark are associated with or sponsored or approved by Plaintiff." (Id.). Therefore, taking Plaintiff's allegations as true, the Court finds that there is a strong likelihood of confusion in the present case because consumers may associate Plaintiff's

COOLMATH Mark with the Defendants' Infringing Mark. Accordingly, Plaintiff has met its burden as to its claim for trademark infringement under Federal law.

**B.   Unfair Competition Under Federal Law & Florida Common Law**

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), provides in relevant part:

(a) Civil action

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which —

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, . . .

* * *

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A).

Furthermore, the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204, provides that "[u]nfair

methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." Fla. Stat. § 501.204(1); see also Bavaro Palace, S.A. v. Vacation Tours, Inc., 203 F. App'x 252, 256 (11th Cir. 2006).

To establish either federal unfair competition under Section 43 of the Lanham Act, a violation of the Florida common law of unfair competition, or a violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Stat. § 501.204, the allegations of the Complaint must demonstrate that Plaintiff "(1) had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1193 (11th Cir. 2001); Suntree Techs., Inc. v. Ecosense Int'l, Inc., 693 F.3d 1338, 1345 (11th Cir. 2012)(finding that the district court did not err in concluding that the legal analysis was the same for unfair competition under the Lanham Act, violation of the state law of unfair competition, and violation of the Florida Deceptive and Unfair Trade Practices Act).

The facts alleged in the Complaint establish that Plaintiff has prior rights in the COOLMATH Mark. To begin, Plaintiff has been using its COOLMATH Mark since at least 1997. (Doc. # 1 at ¶¶ 1, 11). Further, in connection with enforcing its rights in the COOLMATH Mark, Plaintiff owns an incontestable registration for the COOLMATH Mark. (Id. at ¶¶ 18-19). Defendants, however, did not begin using the Infringing Mark until approximately April of 2014, when Wade registered the coolmathgamesforfun.com domain name and Defendants launched a website at that domain name offering "online math-related games" under the Infringing Mark. (Id. at ¶¶ 20, 22). Accordingly, the Court finds that the well-pled allegations, taken as true, demonstrate that Plaintiff's COOLMATH Mark has priority. (See Doc. # 27 at 16-18)(citing PetMed Express, Inc. v. MedPets.Com, Inc., 336 F. Supp. 2d 1213, 1218 (S.D. Fla. 2004)("Plaintiff's mark has priority since PetMed has been selling its products since 1996, while Defendant created the domain names www.MedPets.com and www.1888MedPets.com in 2001.")).

Likewise, as set forth above, the allegations in the Complaint are sufficient to establish that the Infringing Mark is confusingly similar to Plaintiff's COOLMATH Mark. See Id. (finding that a showing of likelihood of confusion for

purposes of claim under Section 32(1) will also establish likelihood of confusion under Section 43(a)). Therefore, Plaintiff has established that Defendants' marketing, advertising, and offering of online math-related games under the Infringing Mark amounts to unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A) and Fla. Stat. § 501.204.

### C.   Cybersquatting

To establish a claim under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), a plaintiff must establish that "(1) it has a valid trademark entitled to protection; (2) its mark is distinctive or famous; (3) the defendant's domain name is identical or confusingly similar to . . . the owner's mark; and (4) the defendant used, registered, or trafficked in the domain name (5) with a bad faith intent to profit." Sound Surgical Techs., LLC v. Leonard A. Rubinstein, M.D., P.A., 734 F. Supp. 2d 1262, 1275 (M.D. Fla. 2010)(internal quotation omitted).

Here, Plaintiff has alleged sufficient facts to establish its Cybersquatting claim. As set forth above, Plaintiff's COOLMATH Mark is incontestable. (Doc. # 1 at ¶ 19). To that end, U.S. Registration No. 3,404,699 serves as "conclusive evidence of the validity of the registered mark,

of the registration of the mark, and of Plaintiff's exclusive right to use the mark in commerce on or in connection with the goods and services for which the mark is registered." (Doc. # 27 at 18; Doc. # 1 at ¶ 48). Further, Plaintiff has alleged that its COOLMATH Mark was distinctive at the time of Defendants' registration of the coolmathgamesforfun.com domain name. (Id.)(citing PetMEd Express, 336 F. Supp. 2d at 1219 ("Plaintiff has established the distinctiveness of its trademarks not only through Defendants' default, but also by having registered the marks.")).

Plaintiff has also alleged that, without authorization from Plaintiff, "Defendants launched a website at coolmathgamesforfun.com offering online math-related games under the Infringing Mark." (Doc. # 1 at ¶¶ 22-24; Doc. # 27 at 19). Defendants' website is "virtually identical to Plaintiff's COOLMATH Mark, and adds only the generic words 'GAMES' and 'FOR FUN.'" (Doc. # 27 at 19; Doc. # 1 at ¶ 49); Sound Surgical Techs., 734 F. Supp. 2d at 1275 (citation omitted)("Slight differences between domain names and marks, such as the addition of generic words or words describing the product or service, ordinarily will not prevent a likelihood of confusion.").

Plaintiff has also averred that Defendants used the coolmathgamesforfun.com domain name with the bad faith intent to:

> profit from the COOLMATH Mark and to reap the benefit of Plaintiff's significant goodwill in the COOLMATH Mark, to divert consumers to the coolmathgamesforfun.com domain name for their own commercial gain, and to otherwise profit from unauthorized use of the COOLMATH Mark.

(Doc. # 1 at ¶ 51). By failing to respond to the Complaint, Defendants have admitted all of the above well-plead allegations. Accordingly, the Court enters judgment on Plaintiff's cybersquatting claim against Defendants.

### III. Permanent Injunction

"Under traditional equitable principles, a plaintiff seeking a permanent injunction must demonstrate (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction." Angel Flight of Ga., Inc. v. Angel Flight Am., Inc., 522 F.3d 1200, 1208 (11th Cir. 2008).

"[I]n ordinary trademark infringement actions[,] complete injunctions against the infringing party are the

order of the day. The reason is simple: the public deserves not to be led astray by the use of inevitably confusing marks. . . ." Id. at 1209. Furthermore, the Eleventh Circuit has noted that "[i]t is generally recognized in trademark infringement cases that (1) there is no[ ] adequate remedy at law to redress infringement and (2) infringement by its nature causes irreparable harm." Tally-Ho, Inc. v. Coast Cmty. Coll. Dist., 889 F.2d 1018, 1029 (11th Cir. 1989) (quoting Processed Plastic Co. v. Warner Commc'ns, 675 F.2d 852, 858 (7th Cir. 1982)).

Therefore, Defendants and their officers, agents, directors, shareholders, principals, licensees, distributors, attorneys, servants, employees, affiliates, subsidiaries and assigns, and all those persons or entities in active concert or participation with any of them, are hereby jointly and severally permanently enjoined and forever restrained from:

    a) [U]sing the Infringing Mark on or in connection with the advertising, promotion, distribution, displaying, sale or offering for sale of online educational math games or in connection with any related goods or services, including but not limited to downloadable games in the Apple iTunes or App Stores;

b) [U]sing the COOLMATH Mark, or any mark that includes COOLMATH in whole or in part, or a phonetic equivalent or misspelling thereof, or any other simulation, reproduction, copy, colorable imitation or confusingly similar variation of the mark COOLMATH, in connection with the advertising, promotion, distribution, displaying, sale or offering for sale of any online math games or in connection with any related goods or services, including but not limited to downloadable games in the Apple iTunes or App Stores;

c) [C]onducting any activities in the United States that relate to, refer to or concern the advertising, promotion, distribution, displaying, sale or offering for sale of online math games, or related goods or services, under the Infringing Mark or any mark or trade or business name that includes COOLAMTH in whole or in part, or is a phonetic equivalent or misspelling thereof, or that is a simulation, reproduction, copy, colorable imitation or confusingly similar variation of the mark COOLMATH;

d) [U]sing any false designation of origin or false description or performing any act, which can, or is likely to, lead members of the trade or public to believe that any online math game or related good or service advertised, promoted, distributed, displayed, sold or offered for sale by Defendants is in any manner associated or connected with Plaintiff, or is authorized, licensed, sponsored or otherwise approved by Plaintiff;

e) [E]ngaging in any other activity constituting unfair competition with Plaintiff, or

18

constituting an infringement of the COOLMATH Mark;

f) [A]pplying to register or registering in the United States Patent and Trademark Office or in any state trademark registry any mark consisting in whole or in part of the word COOLMATH or consisting in whole or in part of any simulation, reproduction, copy or colorable imitation of the COOLMATH Mark, for online games, or any related goods or services;

g) [I]ncorporating under, doing business under or seeking to trade under any business name that includes the term "COOLMATH" in the United States;

h) [U]sing any domain name or metatag that includes in whole or in part the term "COOLMATH" or any formative thereof in connection with a web site that advertises, promotes, markets, displays, sells or offers for sale or otherwise refers to online math games, or any related goods or services;

i) [O]wning, renting, purchasing or otherwise obtaining rights to any internet search term that includes in whole or in part the term "COOLMATH" or any formative thereof for purposes of directing internet traffic to any web site that advertises, promotes, displays, or otherwise refers to online math games, or any related goods or services; and

j) [A]ssisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (i) above.

Furthermore, Defendants are hereby ordered to deliver to Plaintiff's attorney – within thirty days of the issuance of this Order - for destruction, all goods, labels, tags, signs, stationery, prints, packages, promotional and marketing materials, advertisements and other materials (a) currently in their possession or under their control or (b) recalled by Defendants pursuant to any order of the Court or otherwise, incorporating, featuring, or bearing the Infringing Mark or any other simulation, reproduction, copy or colorable imitation of the COOLMATH Mark in connection with online math games, or related goods or services, and all plates, molds, matrices and other means of making the same. Finally, Defendant shall transfer or cause to be transferred the coolmathgamesforfun.com domain name to Plaintiff and execute all necessary documents to effectuate such transfer.

## IV.   **Monetary Damages**

"Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." Automobil Lamborghini SpA v. Lamboshop, Inc., No. 2:07-cv-266-JES-SPC, 2008 WL 2743647, *2 (M.D. Fla. June 5,

2008) (internal quotation marks omitted). "If a default judgment is warranted, the court may hold a hearing for the purpose[ ] of assessing damages. However, a hearing is not necessary if sufficient evidence is submitted to support the request for damages." Id. (internal citations omitted). The Court finds a hearing unnecessary to determine the appropriate amount of damages against Defendants because (1) the Court has sufficient record evidence to properly determine damages without a hearing and (2) Plaintiff's requested damages are statutory.

Plaintiff seeks statutory damages in light of its ACPA "Cybersquatting" claim, 15 U.S.C. § 1125(d), against Defendants. (See Doc. # 27 at 23). "In a case involving a violation of [15 U.S.C. § 1125(d)(1)], the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." See 15 U.S.C. § 1117.

Specifically, Plaintiff seeks an award of $15,000 in statutory damages,[1] noting that such an award would "plainly serve the dual purpose of deterring wrongful conduct and compensating Plaintiff." (Doc. # 27 at 23)(internal quotation omitted). To support their request, Plaintiff provides that:

> Defendants have registered and used a domain name confusingly similar to Plaintiff's registered COOLMATH Mark in connection with advertising and offering goods and services identical or confusingly similar to those offered by Plaintiff. Likewise, though Defendants are using a single infringing domain name, "they are continuing to pervasively engage in cybersquatting and other acts of infringement, despite being aware of this lawsuit."

(Id.)(citing DC Comics v. G5 Barbers, L.L.C., No. 6:11-cv-1600-Orl-36GJK, 2012 WL 4328610, *7 (M.D. Fla. Aug. 22, 2012)(awarding $25,000 for violation of the ACPA)).

"District courts have wide discretion in awarding statutory damages." PetMed Express, 336 F. Supp. 2d at 1219. In determining an appropriate award of statutory damages, the Court must strike a balance between permitting a windfall for the plaintiff and emphasizing to the defendant "that the

---

[1]   In the present Motion, Plaintiff does not request the "exemplary and punitive damages or the attorneys' fees and costs demanded in the Complaint." (See Doc. # 27 at 23).

trademark laws and court proceedings are not mere incidental costs to doing business in the profitable counterfeit trade." Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 122-23 (S.D.N.Y. 2008).

The Court finds that Plaintiff's request for $15,000 in statutory damages to be appropriate under the circumstances surrounding this action. Here, Defendants have chosen to default rather than to cooperate in providing particular records from which to assess the value of the Infringing Mark. Additionally, as explained above, the Court concludes that Defendants' infringing conduct was indeed willful.[2]

Furthermore, the Court finds that such an award accomplishes the objectives underlying the following relevant factors: "the deterrent effect on others besides the defendants" and "the potential for discouraging the defendant." Carlo Bay Enter., Inc. v. Two Amigo Rest., Inc., No. 8:14-cv-1989-T-33TGW, 2014 WL 6886053, *8 (M.D. Fla. Dec. 8, 2014). The Court is mindful that "[t]he statutory damages provision serves to sanction or punish defendants in order to deter future wrongful conduct." WFTV, Inc. v. Maverik Prod. Ltd. Liab. Co., No. 6:11-cv-1923, 2013 WL 3119461, *13 (M.D.

---

[2]   See PetMed Express, Inc., 336 F. Supp. 2d at 1220 ("[T]he Court may infer willfulness from Defendants' default.").

Fla. June 18, 2013)(citing <u>St. Luke's Cataract & Laser Inst.,</u> <u>P.A. v. Sanderson</u>, 573 F.3d 1186, 1204-05 (11th Cir. 2009)).

The Court is satisfied that statutory damages in the amount of $15,000, coupled with the injunctive relief set forth above, will serve as a sufficient deterrent against any future wrongful conduct by Defendants. Thus, based on the relevant factors discussed previously and the circumstances of this case, the Court finds that statutory damages in the amount of $15,000 is an appropriate, just, and reasonable award.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Plaintiff Coolmath.com, LLC's Motion for Default Judgment (Doc. # 27) is **GRANTED** to the extent set forth herein.

(2) The Clerk is directed to enter Judgment in favor of Plaintiff Coolmath.com LLC and against Defendants Evertap LLC, Cool Math Games For Fun, LLC and Ryan Wade in the amount of **$15,000**. Thereafter, the Clerk is directed to **CLOSE THIS CASE**.

(3) The Court declines to retain jurisdiction over this matter. In the event Defendants fail to adhere to this

Court's Order, Plaintiff may pursue appropriate remedies
at that time.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this
<u>17th</u> day of December, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel and Parties of Record